17-1920
Greene v. City of New York

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION
TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED
AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS
COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A
PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY
NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals
for the Second Circuit, held at the Thurgood Marshall United
States Courthouse, 40 Foley Square, in the City of New York,
on the 19th of July, two thousand eighteen.

PRESENT:
        DENNIS JACOBS,
        REENA RAGGI,
        PETER W. HALL,
            Circuit Judges.
_____

CY GREENE,
    Plaintiff-Appellant,

    -v.-                                         17-1920

CITY OF NEW YORK, NEW YORK CITY
TRANSIT AUTHORITY, MICHAEL
NORRITO, DETECTIVES OR FORMER
DETECTIVES, SHIELD NO. 3736,
JOSEPH TUMBARELLO, SHIELD NO.
883, in his individual and
official capacities, CHARLES J.
HYNES, DISTRICT ATTORNEY, KINGS
COUNTY, in his official

1

capacity,
    **Defendants-Third-Party Plaintiffs-Appellees,**

**ROBERT SULLIVAN, former
Assistant District Attorney, in
his individual and official
capacities,**
    **Defendant-Third-Party Plaintiff,**

**JOHN DOES, 1, 2, 3, etc., whose
identities are unknown but who
are or formerly were Police
Officers and/or supervisory
personnel of the New York City
Police Department and/or Transit
Authority Police Department, all
being sued in their individual
and official capacities,**
    **Defendants-Appellees,**

**U.S. MARSHAL (EDNY) CHARLES DUNNE,**
    **Respondent,**

**LEWIS COHEN,**
    **Third-Party Defendant.**

_____

**FOR PLAINTIFF-APPELLANT:**      JOHN F. SCHUTTY III, Law Office of John F. Schutty, P.C., Eastchester, NY.

**FOR DEFENDANTS-THIRD-PARTY
PLAINTIFFS-APPELLEES:**      AARON M. BLOOM (with Richard P. Dearing and Claude S. Platton on the brief), of Counsel, for Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY.

    Appeal from a judgment of the United States District Court for the Eastern District of New York (Donnelly, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Cy Greene, whose 1985 murder conviction was vacated in 2006 on the basis of ineffective assistance of counsel, appeals from an order of the United States District Court for the Eastern District of New York (Donnelly, J.) granting summary judgment for the defendants in Greene's civil suit against the City of New York and certain detectives and prosecutors who participated in the murder investigation and trial. Greene challenges the grant of summary judgment as to only some of his § 1983 fair trial claims. On de novo review, see Sousa v. Marquez, 702 F.3d 124, 127 (2d Cir. 2012), we affirm. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**1.** Greene contends that Detective Michael Norrito fabricated evidence when he reported to prosecutors that a witness named Eric Head identified Eric Tidwell[1] as a possible participant in the crime, whereas (Greene argues) Head allegedly identified Lenny Best instead. To prevail on that claim, Greene must establish that Norrito knowingly created false evidence that was likely to influence the jury and forwarded it to prosecutors, resulting in a deprivation of Greene's liberty. See Dufort v. City of New York, 874 F.3d 338, 355 (2d Cir. 2017). As the district court determined, Greene cannot make this showing.

As to falsehood, the sole evidentiary basis for Greene's claim is that Norrito's report states that Head identified "Joseph Ross, Ronald Blanding, and Eric

---

[1] Both the district court and the appellant's brief variously refer to this individual as either "Eric Tidwell" or "Eric Tisdale," while the appellees' brief consistently refers to him as "Eric Tidwell." We understand these names to refer to the same individual, and we refer to him as "Eric Tidwell."

3

[Tidwell]," whereas Detective Joseph Tumbarello's notes from the same interview reflect that Head identified "Joseph Ross, Ronald Blanding, and Lenny Best." Greene v. City of New York, No. 08CV00243AMDCLP, 2017 WL 1030707, at *25 (E.D.N.Y. Mar. 15, 2017) (internal quotation marks omitted). Greene's assertion that *Tumberello*'s account "is surely correct," id. at *25 n.47 (internal quotation marks omitted), and that Norrito's account is therefore false, is entirely unsubstantiated. A plaintiff cannot defeat a motion for summary judgment with conclusory allegations or conjecture of that sort. See Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001).

Nor can Greene establish that the alleged fabrication would have been "likely to influence [the] jury's decision." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). Prosecutors were aware of the discrepancy between Norrito's and Tumberello's accounts of the Head interview; they were aware that Lenny Best might have information about the murder; and detectives other than Norrito and Tumberello spoke with Best the day after the Head interview. While it was ultimately discovered that Eric Tidwell had been in prison at the time of the murder, it is undisputed that at least one other witness identified him as a possible participant "through a photo identification." Appellant's Br. at 49 n.32. Moreover, Head, Best, and Tidwell did not testify at Greene's murder trial, and Greene's trial attorney has testified that he specifically chose not to call "[Best] and Tidwell and the rest of them" as a matter of trial strategy. App'x at 902. There is therefore no record support for the assertion that the jury's decision would have been affected if Norrito's account of the Head interview had listed Best rather than Tidwell.

**2.** Greene contends that Detectives Norrito and Tumbarello suppressed evidence that was favorable to the defense. The government is required to disclose to defense counsel "evidence [that is] . . . favorable to the accused, either because it is exculpatory, or because it is

4

impeaching." United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004). However, *police officers* satisfy their disclosure obligations "when they turn [the relevant] evidence over to the prosecutors," because "prosecutors, who possess the requisite legal acumen, [are ultimately] charged with the task of determining which evidence . . . must be disclosed to the defense." Walker v. City of New York, 974 F.2d 293, 299 (2d Cir. 1992); see also Bermudez v. City of New York, 790 F.3d 368, 376 n.4 (2d Cir. 2015) ("Police officers can be held liable . . . under § 1983 if they withhold exculpatory evidence from *prosecutors*." (emphasis added)). Of Greene's claims that the detectives suppressed evidence, all but one fail as a matter of law because they concern evidence that the detectives turned over to prosecutors.

The remaining claim is that Norrito withheld from prosecutors the particulars of his interview with two individuals seen leaving the murder scene in a cab. That claim fails because it concerns evidence that was not actually "suppressed." Rivas, 377 F.3d at 199. "Evidence is not 'suppressed' [for disclosure purposes] if the defendant either knew . . . or should have known . . . the essential facts permitting him to take advantage of [that] evidence." United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted); see Lewis v. Conn. Comm'r of Correction, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted) (same). The record discloses that Greene's defense counsel knew (or should have known) the essential facts pertaining to the passengers in the cab-- namely, that they were seen running from the scene of the crime; that they told the driver they were having a problem and needed to be taken away immediately, even though the driver had explained to them that he was off-duty; that one of them was wearing a brown shirt (and the government's principal eye-witness had described the killer as wearing a brown shirt); that they were tall (whereas Greene is short); and that they spoke Spanish (whereas Greene does not speak Spanish). These facts--which are largely duplicative of those allegedly withheld by Norrito--were

5

sufficient to alert Greene's counsel to the opportunity to develop a defense theory based on the possible role of the *passengers* (as opposed to Greene) in the murder.

Greene's counsel, however, elected not to interview the cab driver, and he made no attempt to locate or speak with the passengers. Cf. United States v. Stewart, 513 F.2d 957, 960 (2d Cir. 1975). Ultimately, counsel's failure in this regard formed a basis of the ineffective-assistance finding that led to the vacatur of Greene's conviction. But Greene cannot impose civil liability on Detective Norrito for defense counsel's failure to effectively utilize the evidence in his possession.[2] Accordingly, Greene's claim fails.

**3.** Greene's Monell claim against the City of New York rests on the alleged failure of the Kings County District Attorney's Office ("KCDAO") to adequately train or supervise its prosecutors with respect to their disclosure obligations. To prevail on that claim, Greene must establish both that (1) prosecutors working on his case violated their disclosure obligations and therefore violated Greene's constitutional rights, and (2) at least one such violation was attributable to the KCDAO's training or supervising "policies." See Segal v. City of New York,

---

[2] Following oral argument, Greene filed a letter contesting the defendants' statement at oral argument that, prior to the criminal trial, Greene's counsel was provided the cab driver's name and address. However, Greene took-- and successfully litigated--the opposite position in his fourth state court post-conviction proceeding. See App'x at 332-33 ("At one of the hearings on [Greene's fourth post-conviction motion], [Greene's] counsel admitted that he [had] received certain police reports and that he did not interview any of the persons referred to in those reports," including "Mr. James Guerrier, a taxi driver . . . ."). As a result, no reasonable jury could find that Greene's defense counsel was deprived of the cab driver's identity.

6

459 F.3d 207, 219 (2d Cir. 2006). Greene's claim fails because, even assuming arguendo that he can establish an underlying constitutional violation, he cannot establish that any such violation resulted from a KCDAO policy.

"In limited circumstances, a local government's decision not to train [or supervise] [its] employees [with respect to] their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of [liability under] § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). But a § 1983 claim against a municipality is at its weakest "where [it] turns on a[n] [alleged] failure to train [or supervise]." Id. This is in part because the alleged failure "must amount to *deliberate indifference* to the rights of [citizens]." Id. (emphasis added) (internal quotation marks omitted).

To prove deliberate indifference, a plaintiff must prove that the municipality failed to take corrective measures despite having "actual or constructive notice that" a deficiency in its "training [or supervising] program" was "caus[ing] city employees to violate citizens' constitutional rights." Id. This generally requires a plaintiff to prove that the constitutional violation underlying his claim was preceded by "[a] pattern of similar constitutional violations." Id. at 62. When, as here, the claimed violation concerns the nondisclosure of evidence, the plaintiff must point to a pattern of prior violations concerning nondisclosure of the same sort of evidence. See id. at 62-64 (noting that a claim based on a municipality's alleged "[f]ailure to train [or supervise] prosecutors in their [disclosure] obligations does not fall within the narrow range of . . . hypothesized single-incident liability [claims]"). Greene cannot make this showing.

Greene's only evidence that prosecutors in the KCDAO committed other violations of their disclosure obligations is a list of 36 court decisions, issued over a 22-year span, finding such violations. However, all but two of

7

those decisions were issued *after* Greene's trial.  A plaintiff cannot point to "contemporaneous or subsequent" violations to "establish a pattern of violations that . . . provide[d] notice to the cit[y] [that it needed] . . . to conform [its training or supervising program] to constitutional dictates."  Id. at 63 n.7 (second alteration in original) (internal quotation marks omitted).  The two *prior* violations Greene cites, which occurred in 1975 and 1979, are not enough to sustain his burden.  See Jones v. Town of E. Haven, 691 F.3d 72, 85 (2d Cir. 2012) (concluding that the plaintiff "fell far short of" establishing municipal liability where the "evidence showed [only] two instances, or at the most three, over a period of several years in which a small number of" city employees committed violations).

Even if two violations could constitute a pattern, the violations Greene cites are inapposite because they do not concern the nondisclosure of the same sort of evidence at issue in *this* case, *viz.*, an alleged deal between the KCDAO and a potential witness intended to induce his testimony; an audiotape of an interview with a witness; and notebooks containing detectives' notes from interviews with witnesses.  See Connick, 563 U.S. at 62-63 (finding four prior violations insufficiently "similar to the violation at issue" to "have put [the city] on notice that specific training was necessary" because none "involved [the] failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind"); see also Jones v. City of New York, 988 F. Supp. 2d 305, 313 (E.D.N.Y. 2013) ("Although plaintiff's amended complaint includes an impressive recitation of past . . . claims against the [KCDAO], none deal with the specific type of [evidence] at issue here—ambiguous DNA evidence.").  Accordingly, Greene's showing is insufficient as a matter of law.

8

We have considered Greene's remaining arguments and find them to be without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9